UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **MAUREEN PHILIPS LeBLANC** | **17-12339** |
| DEBTOR | SECTION A |
| | CHAPTER 13 |

### REASONS FOR DECISION

On June 27, 2018 and August 29, 2018, the Motion to Annul Cancellation of Mortgage and to Rank Mortgages[1] ("Motion") filed by Ocwen Loan Servicing, LLC ("Ocwen") came before the Court. At the conclusion of the hearing on August 29, 2018, the Court took the matter under advisement.

**I. Facts**

On August 27, 2001 Maureen LeBlanc ("Debtor") purchased Lots 46 and 47, both of which are located at the municipal address 161 Middlebrook Drive, Slidell, Louisiana 70458.[2] Debtor sold Lot 46 on May 5, 2004.[3]

On July 25, 2005, Debtor executed a promissory note in favor of Quicken Loans, Inc. ("Note") secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Quicken Loans, Inc. ("Mortgage").[4]

---

[1] P-115.
[2] Exh. 13.
[3] Exh. 18.
[4] Exh. 1; P-120 at 2.

The Mortgage was executed by act under private signature. On August 4, 2005, Quicken Loans, Inc. ("Quicken") registered the mortgage with MERS.[5] On August 15, 2005, the Mortgage was recorded in the mortgage records of St. Tammany Parish, Louisiana under Instrument No. 1512016.[6] The property encumbered by the Mortgage was described as:

> All that certain Lot or Parcel of Land, together with all the buildings and improvements thereon, and all rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in BAYOU BONFOUCA ESTATES, SECTION 1, Slidell, Street. Tammany Parish, to-wit: **Lot 46** of said subdivision and more fully described as follows: Said Lot 46 has a frontage of 50.00 feet on Middlebrook Drive, with a depth on the East of 123.9 feet, a depth on the West of 121.6 feet, with a width in the rear of 100.00 feet, more or less, which is varied by the traverse of Bayou Bonfouca. All as will be seen by reference to plat on Survey no. 2028 by John Sollberger, dated August 12, 1958. Further in accordance with survey by Ivan M. Borgen, C.E., dated February 14, 1978, Survey No. 14,174, copy of which is attached to Act. No. 382991. Commonly known as: 161 Middlebrook Dr., Slidell, LA 90458.[7] (*Emphasis supplied*.)

Quicken endorsed the Note to IndyMac Bank F.S.B ("IndyMac"). Thereafter IndyMac endorsed the Note in blank. Currently, IndyMac INDEX Mortgage Loan Trust 2005-AL33 represented by its trustee, Deutsche Bank National Trust Company ("Deutsche Bank") holds the Note and Mortgage.

On August 8, 2005, Debtor received a letter from Quicken advising her that it had transferred the servicing of her debt to IndyMac. The letter requested that she forward all future

---

[5] Exh. 22.
[6] Exh. 1.
[7] *Id.*

payments on the Note to IndyMac.[8] MERS' records indicate that Quicken assigned the Mortgage and servicing rights to IndyMac on August 31, 2005.[9]

On October 25, 2005, Debtor executed a mortgage ("Capital One Mortgage") in favor of Hibernia National Bank (now Capital One[10]) to secure a Home Equity Line of Credit Agreement for $74,000.[11] The Capital One Mortgage was also executed under private signature and, on November 22, 2005, Capital One recorded it in the mortgage records of St. Tammany Parish.[12] The legal description of the property contained in the Capital One Mortgage reads:

> All that certain lot or parcel of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in Bayou Bonfouca Estate Section 1, Slidell, St. Tammany Parish, Louisiana, to-wit: ***Lot 47*** of said subdivision and more fully described as follows: said Lot 47 has a frontage of 50 feet on Middlebrook Drive, with a depth on the East of 150.2 feet, a depth on the West of 123.9 feet, and a width in the rear of 100 feet more or less which is varied by the traverse of Bayou Bonfouca. (*Emphasis supplied*.)

On December 13, 2005, Debtor executed another mortgage ("SBA Mortgage") on lot 47, this time in favor of the U.S. Small Business Association ("SBA") to secure a promissory note dated December 13, 2005.[13] The SBA Mortgage was recorded in the St. Tammany Parish Mortgage Records on January 11, 2006.[14]

---

[8] Exh. 21.
[9] *Id.*
[10] Capital One Financial Corporation acquired Hibernia Corporation in November 2005. As a result, Hibernia National Bank changed its name to Capital One N.A.
[11] Exhs. 6, 11.
[12] Exhs. 6, 9.
[13] Exhs. 9, 10.
[14] Exh. 10.

On an unknown date, Debtor executed an additional mortgage ("Corrected Mortgage") altering the metes and bounds property description in the Mortgage to conform to Lot 47, rather than Lot 46.[15] Although the Corrected Mortgage purports to have been executed on July 25, 2005,[16] it was not recorded in the St. Tammany Parish mortgage records until March 8, 2006.[17]

On May 10, 2006, MERS submitted a Release of Mortgage to the Clerk of Court for St. Tammany Parish requesting the cancellation and release of the Mortgage from the mortgage records.[18] The Release of Mortgage states that the obligations secured by the Mortgage had been paid in full.[19] However, the Note had not been satisfied.[20]

On June 7, 2006, the Clerk of Court for St. Tammany Parish cancelled the Mortgage from the public records.[21]

On June 15, 2007, Capital One executed a second note with a credit limit increase to $200,000[22] ("Second Capital One Note"). Capital One reinscribed the Capital One Mortgage on August 15, 2017.[23]

The servicing rights on the Note have been transferred several times since its execution,[24] but Deutsche has remained the Note-holder since its endorsement in blank.[25]

---

[15] Exh. 4.
[16] *Id.*; Exh. 1.
[17] Exh. 10. The Corrected Mortgage is filed under Instrument No. 1540231.
[18] Exh. 5.
[19] *Id.*
[20] P-120 at 4 ¶ P.
[21] *Id.*
[22] Exh. 12.
[23] Exh. 20. Instrument No. 1524386, mortgage records of St. Tammany Parish, Louisiana.
[24] Exh. 8.
[25] Exh. 22.

On August 31, 2017, Debtor filed a voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code.[26]

On October 5, 2017, the Corporate Assignment of Mortgage by MERS, as nominee for Quicken Loans Inc., its successors and/or assigns to Deutsche Bank dated September 29, 2017 was recorded in the mortgage records of the Clerk of Court of St. Tammany Parish under Instrument No. 2082054.[27]

The parties dispute the ranking of the security interests held by Capital One and Deutsche Bank. However, they stipulate that the SBA Mortgage holds a valid second position on Lot 47. As a result, the question before the Court is whether the Mortgage or the Capital One Mortgage ranks first, leaving the other to rank in the third position.

## II. Law and Analysis

Deutsche Bank asserts that the Mortgage outranks the Capital One Mortgage because it was recorded first in time. On the other hand, Capital One alleges that the Mortgage did not encumber Lot 46 and was cancelled in June of 2006. Therefore, its mortgage ranks first on lot 47. Deutsche Bank counters that the cancellation was done in error by someone other than the holder of the Note. Deutsche Bank also avers that the property description contained in the Mortgage sufficiently encumbers Lot 47 and places anyone on notice of its existence.

### A. *Cancellation of the Mortgage*

Contending the cancellation and release of the Mortgage without the holder's consent was a mistake, Deutsche Bank seeks to have the cancellation annulled. In Louisiana, a mortgage

---

[26] P-1.
[27] P-120 at 4-5; Exh. 2.

5

creates a security interest in property owned by the mortgagor.[28] The mortgage governs the rights in the security but ultimately is an accessory to the outstanding note or obligation.[29] A mortgage cannot exist without the enforceable obligation it secures.[30] Therefore, ownership of a mortgage (or the rights under the mortgage) follows the promissory note and transfers to the note-holder upon negotiation of the note.[31]

The Mortgage was executed in favor of MERS. MERS is a mortgage registration system designed to track the ownership of mortgages.[32] Because it is not a substitute for recording mortgages in the state or local public records, it is not a depository for original documents.[33] However, its internal records do track the party servicing the obligation for the holder of the note and the "investor" or holder of the obligation being serviced.[34]

Only the note-holder has the legal right to cancel its inscription. Under La. Rev. Stat. Ann. 9:5169,[35] a mortgage may only be cancelled by "the parties interested and having capacity for that purpose." "Implicit in this article is the requirement that all interested parties consent to the cancellation."[36] An "interested party," must be at a minimum the note's holder or owner.[37]

---

[28] La. C.C. art. 3278.
[29] La. C.C. art. 3282.
[30] *Id*.
[31] *Id*; *Auguste v. Renard*, 3 Rob. 389, 390 (La. 1843); *Perot v. Lavasseur*, 21 La. Ann. 529 (La. 1869).
[32] Derek Raleigh Testimony.
[33] An original of the act of mortgage must be filed in the public records of the parish of the property's situs in order to perfect the security interest it creates. La. C.C. arts. 3338, 3341(4).
[34] Exhs. 22, 24.
[35] La. C.C. art. 3371 redesignated as La. R.S. 9:5169 pursuant to Acts 1992, No. 1132, § 4, eff. Jan. 1, 1993. LA. R.S. 9:5169 reads: "Inscriptions of mortgages and privileges are erased by the consent of the parties interested and having capacity for that purpose; this consent to be evidenced by a release, or by a receipt given on the records of the court rendering the judgment on which the mortgage is founded." As quoted, effective through June 30, 2006 and the law at the time of the cancellation.
[36] *Pioneer Enters., Inc. v. Goodnight*, 561 So. 2d 824, 828 (La. App. 2d Cir. 1990).
[37] *Id.* at 829 ( "[A] proper definition of interested party must necessarily include any holder, owner or person with a security interest in the notes").

The facts establish that Quicken requested the Mortgage be released.[38] MERS executed the request to cancel the Mortgage and directed the Clerk of Court for St. Tammany Parish to cancel it.[39] As a result, the Clerk of Court was justified in cancelling the Mortgage because based on the public records, the holder of the Note was MERS, as nominee for Quicken.

In fact, the Note had been endorsed twice, first by Quicken to Indymac, then by Indymac to bearer or Deutsche. Hence, only one of them could have directed the Clerk of Court to cancel the Mortgage. The correct party to order cancellation was the note-holder as of August 31, 2005, the date of the cancellation.[40]

Endorsements do not require dating.[41] A written act of assignment may accompany the transfer by endorsement, but it is not required.[42] Nevertheless, this creates some ambiguity as to the timing of transfers by endorsement requiring a reliance on extrinsic evidence beyond the note itself to determine the time of the transfer.[43] As is typical, the Note's endorsement does not bear a date.[44] The testimony of Quicken's representative did not provide evidence as to the date of transfer except that it occurred after August 8, 2005.[45] The only evidence offered to establish when the endorsement to IndyMac occurred is MERS' record.[46] It reflects that the investor or holder of the Note as of August 31, 2005 was IndyMac not Quicken.[47]

---

[38] Exh. 5.
[39] *Id.*
[40] *Pioneer Enters.*, 561 So. 2d at 828–29.
[41] La. R.S. 10:3-204; La R.S. 9:4422.
[42] *See Mullen v. E.D. Green Realty Co.*, 147 So. 115, 117 (La. App. 2d Cir. 1933).
[43] La. C.C. art. 2046.
[44] Exh. 7.
[45] Eric Gibson Testimony.
[46] Exhs. 22, 23.
[47] *Id.*

MERS provides the record owner of the mortgages it registers access to its system.[48] The MERS' records track by date and party the mortgage's servicer as well as the note's investor.[49] Accordingly, the records maintain the history of trades for both servicing and ownership, which provides a title history for the obligations secured by the mortgages it has registered.[50] Nothing in the record refutes the accuracy of its records. The record also reflects that the MERS system is an industry standard, relied upon by millions of note holders to track transfers of servicing rights and investments. For the above reasons, the Court finds in this instance that MERS' records are both probative and reliable on the question of who held the Note at any given time.[51]

Capital One argues that under La. C.C. art. 3356, an obligee of record's request made according to the law is effective as to third parties, despite the obligee of record having transferred the underlying obligation to another.[52] Under Louisiana law, a clerk of court must cancel a mortgage secured by a non-paraphed obligation "in the manner prescribed by law."[53] Because MERS executed the release of the Mortgage, the Clerk of Court was authorized to cancel it from the public record. Normally this would be sufficient to protect a third party against the unrecorded (cancelled) encumberance. But an exception to the public records doctrine modifies this reading of the law:

---

[48] Derek Raleigh Testimony.
[49] *Id.*
[50] *Id.*; *see also* Exh. 22.
[51] Federal Rule of Evidence 807 ("[A] hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice."). "[T]he [lower] court is given a wide latitude in admitting evidence under the rule." *United States v. El-Mezain*, 664 F.3d 467, 497–98 (5th Cir. 2000) (quoting *United States v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000)).
[52] La. C.C. art. 3356(B); P-121 at 6.
[53] La. C.C. art. 3337.

> A case like this does not depend upon whether the recorder was justified in believing that the note which was presented to him for cancellation of the mortgage was the genuine note described in the act of mortgage, and secured by the mortgage. The case depends upon whether the holder of negotiable note, secured by the mortgage, did in fact consent to have his mortgage cancelled.[54]

Because MERS' records establish IndyMac as the Note-holder at the time Quicken authorized the cancellation and release of the Mortgage,[55] the Mortgage must be reinstated on the public record. The next consideration is from what date it will rank.

A conventional mortgage ranks based on the time it is recorded in the mortgage records of the parish in which the immovable is located.[56] This reflects "a public policy that an interest in real estate must be recorded in order to affect third persons"—an aspect of the Louisiana public records doctrine.[57] That doctrine provides that an innocent third party need only look to the public records to determine adverse claims to real property.[58] It is often characterized as a "negative doctrine because it does not create rights, but rather denies the effect of certain rights unless they are recorded."[59] Hence, when searching the public record, third parties may rely on the absence of a recorded document but may not rely on the contents of the information in the public records.[60] In other words, recordation merely permits a party to introduce an instrument into evidence to assert its validity against third parties; it does not guarantee the validity of the

---

[54] *Freeland v. Carmouche*, 177 La. 395, 148 So. 658, 662 (La. 1933) ("Although the register of mortgages certifies that the land is free of mortgage, if it appears that the order of court, by which a mortgage was ordered to be cancelled, was obtained in the absence of the mortgagee, the purchaser is not compelled to pay the price."); Dreux v. Ducournau, 5 Mart. 625, 625 (La. 1818); *Macarty v. Landreaux*, 8 Rob. 130, 135 (La. 1844) ("A mortgage, when duly recorded, can be erased from the books of the recorder only in one of the modes pointed out by law, that is, by the *consent* of the mortgagee, or by a *judgment* decreeing such erasure.") (citing La. C.C. arts. 3335, 3336, now articles 3371, 3372); *Mrs. De St. Romes v. Widow Blanc*, 20 La. Ann. 424, 425, 96 Am. Dec. 415 (La. 1868); *Morris v. Cain's Ex'rs*, 34 La. Ann. 657, 665 (La. 1882) ("An inscription duly made can be erased only with the creditor's consent, or by a valid decree of court contradictorily obtained.").
[55] Exh. 22.
[56] La. C.C. arts. 3307, 3338.
[57] *Cimarex Energy Co. v. Mauboules*, 2009-1170 (La. 4/9/10); 40 So. 3d 931, 943.
[58] *Davis v. St. Romain*, 2016-811 (La. App. 3 Cir. 6/7/17); 222 So. 3d 793.
[59] *Cimarex Energy*, 40 So. 3d at 944.
[60] *See id.*

instrument's substance.[61] Indeed, it merely echoes the focus of the public records doctrine—to protect third parties against unrecorded interests.[62]

The cancellation of the Mortgage would typically confirm the absence of an encumberance on Debtor's property. As a result, because the Capital One Mortgage was executed prior to recordation of the Corrected Mortgage, the Public Records Doctrine would ordinarily protect the interests of Capital One. Nevertheless, Louisiana courts have forged an exception to the public records doctrine when a security interest is released in error:

> It is well-settled that the cancellation of the mortgage by the recorder without the knowledge or consent of the holder of the negotiable mortgage note does not deprive him of his security even with regard to a third-party dealing with the property on his faith in the public record. When there has been an erroneous cancellation of a mortgage from the mortgage records by the Clerk of Court and the purchase of property by a third-party relying on the public records which show the mortgage to be canceled, the mortgagee is entitled to enforce the mortgage against the mortgaged property.[63]

Importantly, this exception protects parties from fraud and error that would otherwise destroy their security interests.[64] But the exception is narrow. It only applies if the mortgage is cancelled without the holder's knowledge or consent.[65] When the obligee knows of or consents to the cancellation of an encumberance, he cannot argue the cancellation defrauded him.[66] Thus, the

---

[61] *Gulf S. Bank & Trust Co. v. Demarest*, 354 So. 3d 695, 697 (La. App. 4th Cir. 1978).
[62] *Id*. (citing *Camel v. Waller*, 526 So. 2d 1086, 1090 (La. 1988)).
[63] *Pioneer Enters.,* 561 So. 2d at 828 (citing *Cent. Bank v. Frost*, 552 So. 2d 508, 512 (La. App. 2d Cir. 1989); *Cheleno v. Selby*, 538 So. 2d 706, 707 (La. App. 4th Cir 1989); *Gulf S. Bank & Trust*, 354 So. 2d at 697; *Davis-Wood Lumber Co. v. DeBrueys*, 200 So. 2d 916, 919–20 (La. App. 1st Cir. 1967); *Bornes v. Vernon*, 64 So. 2d 18, 20–21 (La. App. 1st Cir. 1953)); *see also Zimmer v. Fryer*, 183 So. 166, 167 (La. 1938); *Nelson v. Stewart*, 136 So. 565, 568 (La. 1931); *Freeland*, 148 So. at 658.
[64] *Lacour v. Ford Inv. Corp.*, 183 So. 2d 463, 466 (La. App. 4th Cir. 1966) (without exception, "[N]o title to real property would be safe, since it could be divested from its true owner through a forged or altered document by means of the mere recordation.").
[65] *Frost*, 552 So. 2d at 512.
[66] *Schudmak v. Prince Phillip P'ship*, 573 So. 2d 547 (La. App. 5th Cir. 1991).

party affected must show an error occurred *and* that the holder did not know of or consent to the cancellation.[67]

For instance, in *Central Bank v. Frost*, the Court held that the exception to the public records doctrine did not apply because the mortgage-holder participated in the litigation that resulted in a judgment cancelling the mortgage.[68] Because the mortgagee did not avail himself of appeal, "the exception to the public records doctrine [was not] necessary in the interest of justice."[69] Likewise, in *Schudmak v. Prince Phillip P'ship*, the Court did not find the exception to the public records doctrine applicable because the mortgage-holder knew of the cancellation of his mortgage.[70] In contrast, courts have held the exception applies when the mortgage-holder does *not* know or consent to the cancellation, has no way of knowing of the wrongful cancellation, and he has no way to protect his security interests in the property.[71]

Having proven that the cancellation was in error and that Indymac was not a participant in its request or execution and did not know of its cancellation, Deutsche is not only entitled to reinstatement of the Mortgage but a ranking derived from the date of original recordation.

Alternatively, Capital One asks the Court to bar the annulment of the Release based on prescription.[72] Both parties expressly recognize that no definitive prescriptive period exists for annulling the cancellation of a mortgage.[73] Deutsche correctly notes that La. C.C. art. 3457

---

[67] *Id.*
[68] *Frost*, 552 So. 2d at 512–13.
[69] *Id.*
[70] 573 So. 2d at 551.
[71] *Neeb v. Graffagnino*, 13-687 (La. App. 5th Cir. 2/26/14); 136 So. 3d 353, 358; *Zimmer*, 190 La. at 814; *Mrs. De St. Romes*, 20 La. Ann. at 425.
[72] P-121 at 9.
[73] *Id.*; P-127.

11

states: "There is no prescription other than that established by legislation." Hence, if no statutory prescriptive period applies, then no prescription can exist.[74]

Capital One also asserts that the equitable doctrine of laches applies.[75] The doctrine of laches requires a showing: (1) that the plaintiff took an unreasonable delay in filing the suit, and (2) this delay harmed the defendant or third party because that party assumed that the plaintiff would not seek further redress.[76] Turning to the first factor, while the cancellation of the Mortgage occurred twelve years ago, neither IndyMac nor its assignees were informed of the cancellation. Indeed, shortly after Deutsche discovered the cancellation, this proceeding was instituted to rectify the problem.[77] As a result, Deutsche did not unreasonably delay filing a corrective cause of action once it was aware of the facts giving rise to that action. Furthermore, Capital One failed to establish that the intervening delay caused it prejudice. In fact, the cancellation of the Mortgage did not occur until after Capital One filed its own mortgage, proscribing any argument that the absence of the Mortgage led Capital One to believe it was first in rank. Since Capital One failed to prove both unreasonable delay and prejudice, the doctrine of laches is inapplicable.

Based on Louisiana jurisprudence, Deutsche adequately persuades the Court that the exception to the public records doctrine applies. The Mortgage will be reinstated and rank from the date of its original recordation.

---

[74] P-127 at 13; *Wells v. Zadek*, 2011-1232 (La. 3/30/13); 89 So. 3d 1145, 1150. Even if a prescriptive period were to exist, the doctrine of *contra non valentem* would be applicable. *Contra non valentem* applies when a party unaware of the facts that create his right of action fails to take action within the prescriptive period. Its existence is to "[S]often the occasional harshness of prescriptive statutes." *Id*. Quicken cancelled the mortgage, without knowledge or any notice to IndyMac or any subsequent holder of the Note. Further, the release was not noted on MERS' record. As a result, subsequent Note-holders had no reason to suspect or verify the Mortgage's continued existence on the public record.

[75] P-121 at 9.

[76] *Sanders v. Silverthorn*, 2003-2726 (La. App. 1st Cir. 2/11/05); 906 So. 2d 518, 525 fn. 5.

[77] P-127 at 12

### *B. Sufficiency of the Legal Description in the Mortgage.*

Under Louisiana law, security interests are strictly construed and disfavored.[78] La. C.C. art. 3288, requires a conventional mortgage "state precisely the nature and situation of each of the immovable or other property over which it is granted . . ." This requires a property description that: "substantially describe[s] the mortgaged property," is "reasonably accurate," and is "full in itself, so far as to inform the public of what property is covered."[79] Thus, the description should not require the public "to [] refer[] elsewhere for information which should be patent on the public record." Since the landmark decision of *McDuffie v. Walker*, Louisiana jurisprudence is settled that a party dealing with immovable property only needs to look to the public record, and if those records do not show recordation of any adverse claim sufficient to put a third party on notice, then he obtains good title, notwithstanding having personal knowledge of the record's defects.[80]

Although, Louisiana jurisprudence has developed guidelines to determine the sufficiency of a property description,[81] the analysis still rests on the specific facts and is decided on a case-by-case basis. Louisiana courts, "liberal[ly] [] constru[e] the description of property in deeds, so as to sustain, rather than defeat, the conveyance."[82] The Louisiana Supreme Court has articulated a starting point for evaluating the sufficiency of a legal property description:

---

[78] *Ocwen Loan Servicing, LLC v. Porter*, 2018-0187 (La. App. 4th Cir. 5/23/18); 2018 WL 2328395, at 5 ("This Court has recognized that '[b]ecause of their very nature and function, security devices should be strictly construed.'") (quoting *Durham v. First Guar. Bank of Hammond*, 331 So. 2d 563, 564 (La. App. 1st Cir. 1976)).

[79] *State ex rel. Brisbois v. Recorder of Mortg.*, 13 Teiss 229, 232 (1915) (quoting *Hyde v. Bennett*, 2 La. Ann. 799, 800 (1847)); *Dawson v. Grezaffi*, 417 So. 2d 450, 451 (La. App. 1st Cir. 1982) (citation omitted).

[80] 125 La. 152, 51 So. 100; *Harry Bourg Corp. v. Punch*, 94-1557 (La. App. 1st Cir. 4/7/95); 653 So. 2d 1322, 1325 ("One must be able to identify and locate the property from the description in the deed itself or from other evidence which appears in the public records.").

[81] *Wood v. Morvant*, 321 So. 2d 914 (La. App. 1st Cir. 1975).

[82] *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 2013-1582 (La. 5/7/14); 144 So. 3d 1011, 1020–21.

A deed is deemed to constitute notice to third parties where it enables the court to locate and identify with certainty, the property intended to be conveyed, with the aid of such extrinsic evidence as is admissible under the rules of evidence. The recorded description need not be given with such particularity as to make resorting to extrinsic evidence absolutely unnecessary. However, the description may not be so inaccurate or faulty as to be misleading.[83]

A description is misleading and thus insufficient to provide adequate notice, if it accurately describes some other property than that being mortgaged or sold.[84] Indeed, when a description accurately describes another property "a purchaser is [] not put on his guard [], but is actually put off his guard."[85] And in that case, "resort[ing] to outside evidence would have effect not merely of making description certain, but of actually changing record; and this cannot be allowed."[86] For example, in *Pittsburgh Plate Glass Co. v. Woodcock*, the court held that

[T]he registry of a mortgage or deed describing a tract of land entirely different from that intended to be affected, however, does not serve as notice of such mortgage or sale to third persons buying on the faith of the public records, unless the description contained in the previously recorded mortgage or deed is sufficient to put the third person on notice that such instrument was intended to affect the property being purchased by him.[87]

In contrast, courts hold a description "sufficient to place third persons on notice," when it contains the correct municipal address, where it refers to other public records that had the correct property description, or where it is relatively ambiguous but admissible extrinsic evidence would allow a third party to identify the property with certainty.[88] The designation of a municipal

---

[83] *Wood*, 321 So. 2d at 918; *Quality Envtl. Processes,* 144 So. at 1021 (citing *White v. Ouachita Natural Gas Co., Inc.*, 177 La. 1052, 1059–60, 150 So. 15, 17 (La. 1933)); *In re Vezinot*, 20 B.R. 950, 953 (Bankr. W.D. La. 1982) (explaining that the sufficiency of an errant property description is determined by answering whether the court can discern the actual location of the property with "certainty") (citing the sufficiency test in *Mid-State Homes, Inc. v. Knapp*, 156 So. 2d 122, 126 (La. App. 3d Cir. 1963)).

[84] *Quality Envtl. Processes*, 144 So. 3d at 1021 (quoting *White*, 150 So. at 17).

[85] *Id*.

[86] *Id*.

[87] 150 So. 2d 660, 664 (La. App. 3d Cir. 1963) (citing *Quatre Parish Co. v. Beauregard Parish School Board*, 220 La. 592, 57 So. 197 (1952); *White*, 150 So. at 17).

[88] *C & G Construction, Inc. v. Valteau*, 615 So. 2d 433, 437 (La. App. 4th Cir. 1993); *King v. Hackett*, 7 Teiss. 497, 499 (La. App. Orl. 1910).

address may be sufficient to describe immovable property even when an additional property description is inaccurate.[89] For example, in *King v. Hackett*, a property description containing the correct municipal address was sufficient even though it excluded portions of the structures found at the address.[90] In *C & G Construction, Inc. v. Valteau*, a property description in a seizure notice omitted reference to one of the lots to be sold, but specified municipal address of improvements located on the property.[91] Because those improvements unquestionably straddled the two lots and the description referred to conveyance book number and folio number containing an accurate description of the property, the Court found it sufficient.[92] In contrast, the Louisiana Court of Appeals for the Fourth Circuit in *Ocwen Loan Servicing, LLC v. Porter* found a property description insufficient when it referenced a municipal address, but lacked a metes and bounds description.[93] Likewise, in *Norman H. Voelkel Construction, Inc. v. Recorder of Mtgs. for East Baton Rouge Parish*[94], the Court held a municipal address was not a sufficient description to enforce a construction lien.

The crux of the issue is whether an individual would be misled by the description.[95] In *City Bank of New Orleans v. Denham*[96], the Court held that although the property was described as lot 2 in square No. 9, instead of lot 2 in square No. 5, the description was nevertheless

---

[89] *Id.*
[90] 7 Teiss. at 499.
[91] 615 So. 2d at 437.
[92] *Id.*
[93] *Ocwen Loan Servicing*, 2018 WL 2328395, at 6.
[94] 2002-1153 (La. App. 1st Cir. 6/27/03); 859 So. 2d 9, 11–12.
[95] *Mid-State Homes*, 156 So. 2d at 122 (property description provided sufficient notice when the first part of the description contained an error, but the remaining portion clearly and correctly showed the property's exact location); *Gretna Finance Co. v. Camp*, 212 So. 2d 857, 860 (La. App. 4th Cir. 1968) (sufficient notice existed when the given square number did not exist, but the description correctly described the subdivision and section, made reference to the survey and the deed of acquisition, gave the lot number, and established the square in which the lot was situated by naming the bounding streets).
[96] 7 Rob. 39 (La. 1844).

sufficient because the metes and bounds description was correct[97] and no lot 2 in square No. 9 existed.[98]

On the other hand, when the document accurately describes a different property, Courts hold the description insufficient because it is likely to mislead. Third parties are not required to look to extrinsic evidence to ascertain what property is affected.[99] For example, in *In re Vezinot*, a property description of "Lot 6, Block 43" did not provide sufficient notice to third parties of a mortgage on Lot 6 Block 42 because it accurately described a ***different*** property.[100] The Court explained, "[T]hird persons searching records for mortgages should not be bound to look beyond mortgage records unless mortgage itself refers to another recorded instrument."[101] The Third Circuit of the Louisiana Court of Appeals further explained the extent to which a third party must search beyond the mortgage records explaining:

> [I]n order for the tax deed to be effective as to third persons the description must fully appear within the four corners of the instrument itself, or by reference to some map, plat, or a deed which has been made a part of the description. A third party, who purchases property on the faith of the public records, is not required to resort to extrinsic evidence, or to search the records for other documents not referred to in the deed itself, in order to determine whether property with which he is dealing has been previously sold.[102]

Here, the Mortgage contains a reference to Lot 46 and provides a metes and bounds description wholly different from that of Lot 47. Specifically, the Capital One Mortgage describes Lot 47 as having dimensions of 50' by 150.2' on one side and 123.9' on the other with a back measurement of 100.'[103] In contrast, the Capital One Mortgage describes Lot 46 as having

---

[97] *Id.*
[98] *Id.*
[99] *See In re Vezinot*, 20 B.R. at 954.
[100] *Id.*
[101] *Id.*
[102] *Newman v. McClure*, 134 So. 2d 556, 562 (La. App. 3d Cir. 1961).
[103] Exh. 6.

dimensions of 50' in front by 123.9 on one side and 121.6 on the other with a rear measurement of 100'.[104]

Subsequent to the execution of the Mortgage, Debtor executed a Corrected Mortgage in favor of Deutsche that changed the description to:

> All that certain lot or parcel of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in Bayou Bonfouca Estates, Section I, Slidell, St. Tammany Parish, Louisiana to-wit: Lot 47 of said subdivision and more fully described as follows: Said Lot 47 has a frontage of 50 feet on Middlebrook Drive, with a depth on the East of 150.2 feet, a depth on the West of 123.9 feet, and a width in the rear of 100 feet more or less which is varied by the traverse of Bayou Bonfouca. All as will be seen by reference to plat of Survey No. 2028 by John H. Solberger, dated August 12, 1958. Further in accordance with survey by Ivan M. Borgen, C.E., dated February 14th, 1978, Survey No. 14,174, which is attached to Act No. 382990. Commonly known as: 161 Middlebrook Dr., Slidell, LA 90458.[105]

This corrected description corresponds to the metes and bounds description of Lot 47 contained in the Capital One Mortgage. However, it was not recorded until March 8, 2006, several months after the recordation of the Capital One Mortgage.

The record confirms that both lots 46 and 47 exist, and the Debtor owned both at one point in time.[106] The parties did not offer the actual metes and bounds description for lot 46 into evidence, but the metes and bounds descriptions contained in the two mortgages are materially different. Like *In re Vezinot*, the description, naming Lot 46 in the Mortgage coupled with a distinguishing metes and bounds measurement is misleading to any person searching the public record for documents affecting Lot 47.[107] Since both lots had at one time carried the same

---

[104] Exh. 1.
[105] Exh. 4.
[106] Exh. 13.
[107] *See In re Vezinot*, 20 B.R. at 954.

municipal address, the only way of distinguishing between the two (2) is by metes and bounds and lot number. It is also worth noting that this is not rural property but contained in a subdivision where lot numbers are frequently the first means of distinguishing property on the public record.

For these reasons, the Court finds that the property description contained in the Mortgage is misleading and insufficient to encumber or alert a third party that it affects Lot 47 in the same subdivision.

### III. Conclusion

The exception to the public records doctrine applies and the Motion to Annul Cancellation of Mortgage should be granted. Deutsche, however, did not provide a property description in the Mortgage sufficient to encumber or to place a third party on notice that it applied to Lot 47. As a result, Capital One holds the first mortgage on Lot 47. Deutsche's Corrected Mortgage encumbers Lot 47 but ranks from the date of its recordation. Therefore, it is in third place.

A separate Order will be entered in accordance with these reasons.

New Orleans, Louisiana, October 30, 2018.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge